## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BRIDGEBUILDER TAX + LEGAL SERVICES, P.A.** ) ) ) | |
| **Plaintiff,** ) ) | |
| **v.** ) ) | **Case No. 16-2236-JWL-GEB** |
| **TORUS SPECIALTY INSURANCE COMPANY,** *nka* ) ) ) | |
| **StarStone Specialty Insurance Company,** ) ) | |
| **Defendant.** ) ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Compel Plaintiff to provide responses to Defendant's discovery requests (**ECF No. 29**). On January 3, 2017, the Court convened an in-person hearing to address the pending motion. Plaintiff BridgeBuilder Tax + Legal Services, P.A. ("BridgeBuilder") appeared through counsel, David L. Marcus. Defendant StarStone Specialty Insurance Company[1] ("StarStone") appeared through counsel, M. Courtney Koger. After consideration of both the arguments of counsel and the parties' briefing, Defendant's Motion (ECF No. 29) is **GRANTED in part and DENIED in part** for the reasons outlined below.

---

[1] StarStone Specialty Insurance Company was formerly known as Torus Specialty Insurance Company (Notice of Removal, ECF No. 1; Mot., ECF No. 29). Because the parties generally refer to Defendant as "StarStone" throughout their briefing, the Court will do the same.

## I.       Background[2]

### A.       Underlying Action in Johnson County District Court

The current case stems from an underlying state action in Johnson County, Kansas between a client named John Grissinger and his attorney ("*Grissinger* action").[3]  The state court matter, filed August 5, 2015, involved a malpractice action against BridgeBuilder, a tax and legal office located in Johnson County.  BridgeBuilder is owned and operated by licensed attorney and certified public accountant, Kevan Acord.

Grissinger claimed BridgeBuilder/Acord convinced him to loan a total of $6 million to an "online, fee-based lending" company called NorthRock, LLC, (Mem., ECF No. 30, at 2 n. 2.).  Two promissory notes (one for $4 million and one for $2 million) were executed during the NorthRock transaction.  After NorthRock defaulted on the notes, Grissinger filed the malpractice action, claiming in part that Acord "failed to disclose the lending risks" and "provided inaccurate information to Grissinger regarding the strength of collateral and personal guarantees for the loan." (*See* ECF No. 33 at 2; ECF No. 1-1, at 13.) BridgeBuilder/Acord and Grissinger ultimately reached a confidential settlement and the case was terminated in October 2015.  (ECF No. 1-1, at 9.)

---

[2] The information recited in this section is taken from the pleadings (*see* Notice of Removal, ECF No. 1) and from the briefs regarding the Motion to Compel (ECF Nos. 29, 30, 33, 36).  This background information should not be construed as judicial findings or factual determinations unless specifically stated.

[3] *John R. Grissinger, individually and as trustee of the John R. Grissinger Living Trust v. Kevan D. Acord and BridgeBuilder Tax + Legal Services, P.A. f/k/a Kevan D. Acord, P.A.*, No. 15CV04793 (Johnson Cty. Dist. Ct., filed Aug. 5, 2015).

**B.     Current Case**

After conclusion of the *Grissinger* action, BridgeBuilder filed the instant suit against its legal malpractice insurer, StarStone, in Johnson County District Court, alleging StarStone breached its contract by failing to defend the *Grissinger* action and failing to pay out the settlement proceeds according to its policy.  Under that policy, Plaintiff claims Defendant had the duty to defend it in the *Grissinger* action.  However, Defendant refused defense or payment, asserting the Policy did not provide coverage for Grissinger's claims.  Defendant removed the case to federal court on April 11, 2016.

Defendant relies upon "Exclusion Q" of its policy to deny Plaintiff's claim. Exclusion Q states the policy does not apply to a claim against an insured "based upon, arising out of, directly or indirectly resulting from, or in any way involving any actual or alleged investment advice, promotion, sale, solicitation, or recommendation of any securities, real estate or other investments" by the insured." (Pet., ECF No. 1-1, at 13-14.) Contending Plaintiff provided investment advice or recommendations to Grissinger, Defendant refused to defend the claim.

Plaintiff claims Grissinger did not make the loan because BridgeBuilder/Acord recommended he do so, which is prohibited by Exclusion Q.  He asserts Grissinger made the loan because he was unaware Acord represented other clients with competing financial interests and did not appreciate the full extent of the risks.  (ECF No. 1-1 at 13.)  Because it did not provide investment advice or recommendations to Grissinger, Plaintiff believes the denial of coverage was wrongful, and Defendant failed to properly investigate the claim.

3

### C.     Current Procedural Posture

This case followed a conventional progression since its filing, until the parties encountered a discovery dispute.   On September 30, 2016, the Court held a telephone conference to discuss the parties' dispute regarding documents withheld by Plaintiff on the basis of attorney-client privilege.   As a result of the conference, the parties were instructed to file written briefing, and all pretrial deadlines were stayed pending resolution of the discovery issues.   (ECF No. 28.)   The Court has now had the opportunity to review the written briefing and to hear argument from the parties at the January 3, 2017 hearing, and is prepared to rule.

## II.     Defendant's Motion to Compel Production of Documents (ECF No. 29)

Defendant propounded First and Second discovery requests to Plaintiff in August 2016 (ECF Nos. 16, 22) to which Plaintiff timely responded in part and objected in part on September 12 and 16, 2016 (ECF No. 30, Exs. 2, 3).   After multiple letters and at least one telephone conference between counsel, and a telephone conference with this Court, the parties could not agree upon the proper scope of production to 11 categories of documents.

### A.     Compliance with D. Kan. Rule 37.2

Throughout the briefing, and during the in-person hearing, the parties demonstrated their multiple attempts to resolve their differences on the pending discovery issues. Therefore, the Court is satisfied they have sufficiently conferred as required by D. Kan. Rule 37.2 and Fed. R. Civ. P. 37(a)(1).   However, despite their attempts, the parties could

not resolve all disputes, leading to Defendant's motion to compel Plaintiff's discovery responses.

### B.    Discovery Disputes

Notwithstanding the parties' efforts, three primary issues remain:   1) whether Plaintiff must produce information relating to the NorthRock transactions withheld on the basis of attorney-client privilege; 2) whether documents related to other transactions between Plaintiff and Grissinger—beyond the NorthRock transactions—are relevant to establish a pattern and practice of investment advice; and 3) if documents related to the other transactions are deemed relevant, whether privilege will prohibit their production. (ECF No. 30 at 3.)  Each topic is addressed in turn.

### 1.    Attorney-Client Privilege

The primary disagreement, which led to the first discovery conference, is whether Defendant is entitled to the production of communications relating to the NorthRock transaction.   Following the September 30, 2016 conference with the Court, Plaintiff provided a privilege log (ECF No. 30, Ex. 7) identifying 42 documents it withheld on the basis of attorney-client privilege.   All documents identified on the log are emails (or documents discussed in emails) to or from Plaintiff which it argues contain legal advice. Plaintiff contends the communications between it and Grissinger are clearly protected by the attorney-client privilege, and because no communications were disclosed in the *Grissinger* action, no waiver occurred from the mere filing of the underlying suit.

Defendant initially argues Plaintiff's assertion of privilege was insufficiently supported in its privilege log.  And, even if the log supported its objection, any attorney-client privilege asserted by Plaintiff either does not exist, or was waived in the filing of the underlying lawsuit.  Finally, Defendant argues the characterization of communications between Plaintiff and Grissinger—whether Acord provided investment "advice" or "recommendations" under Exclusion Q, or merely "convinced" Grissinger to make the loan—lies at the heart of this dispute, and is crucial to its defense.

### a.  Applicable Law: Attorney-Client Privilege

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law.  Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."[4]  The attorney-client privilege "should be strictly confined within the narrowest possible limits,"[5] because "it deprives the factfinder from otherwise relevant information."[6]

In federal court, Federal Rule of Evidence 501 determines what law applies to an analysis of privilege.[7]  In a diversity case such as this one, FRE 501 requires a decision on

---

[4] *High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2012 WL 234024, at *5 (D. Kan. Jan. 25, 2012), *on reconsideration in part,* No. 09-2269-CM-DJW, 2012 WL 1580634 (D. Kan. May 4, 2012) (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981)).

[5] *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 373 (2001) (citing *United States v. Lawless,* 709 F.2d 485, 487 (7th Cir.1983); *In re Grand Jury Investigation,* 599 F.2d 1224, 1235 (3d Cir.1979)).

[6] *Id.* (citing *Fisher v. United States,* 425 U.S. 391, 403 (1976)).

[7] *Schmitz v. Davis*, No. 10-4011-RDR-KGS, 2011 WL 1627010, at *6 (D. Kan. Apr. 28, 2011) (citing *ERA Franchise Sys., Inc. v. N. Ins. Co. of N.Y.,* 183 F.R.D. 276, 278 (D. Kan. 1998)).

privilege be made according to state law.[8]   Though Kansas law necessarily provides the

starting point, at least one court in this district indicated "whether the court applies federal

or Kansas law generally makes no difference in determining whether the attorney-client

privilege applies."[9]

Under K.S.A. § 60-426 and interpreting caselaw, the essential elements of privilege

are:

> (1) Where legal advice is sought (2) from a professional legal advisor in his
> capacity as such, (3) the communications made in the course of that
> relationship (4) made in confidence (5) by the client (6) are permanently
> protected (7) from disclosures by the client, the legal advisor, or any other
> witness (8) unless the privilege is waived.[10]

Generally, confidential communications made between a client and his attorney—acting in

the capacity of legal advisor—in the course of obtaining legal assistance are protected.[11]

However, communications between client and counsel may lack protection if they fall into

one of three categories: 1) statutory exception to privilege, or the 2) voluntary, or 3) implied

waiver of the privilege. In this dispute, Defendant claims the communications between

Grissinger and Plaintiff fall into any one of these categories; therefore, each is considered.

---

[8] *Frontier Refining, Inc. v. Gorman–Rupp Co.,* 136 F.3d 695, 699 (10th Cir. 1998); *see also Schmitz,* 2011 WL 1627010, at *6 (internal citations omitted).

[9] *Simmons Foods, Inc. v. Willis*, No. 97–4192–RDR-DJW, 191 F.R.D. 625, 632 n.1 (D. Kan. 2000) (internal citations omitted).

[10] *Simmons Foods*, 191 F.R.D. at 631 (citing *State v. Maxwell,* 10 Kan.App.2d 62, 63 (1984), and K.S.A. § 60–426 (1994)).

[11] *Id*. at 632.

### i.      Demonstrating Privilege

Before addressing the merits of the privilege, the Court must decide whether it has adequate information to do so.  When a party withholds documents on the basis of attorney-client privilege, that party bears the burden of establishing the privilege applies.[12]  To meet its burden, the objecting party must describe in detail the information it deems protected, and must provide precise reasons for its objection.[13]

Generally, the withholding party makes this showing by submitting a privilege log. The contents of a privilege log vary, but courts in the District of Kansas commonly require a privilege log to include:

(1) A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;

(2) The date upon which the document was prepared;

(3) The date of the document (if different from # 2);

(4) The identity of the person(s) who prepared the document;

(5) The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;

(6) The purpose of preparing the document, including an evidentiary showing, based on competent evidence, "supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;" a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal

---

[12] *Schmitz*, 2011 WL 1627010, at *7-*8 (internal citations omitted).
[13] *Id*. (quoting *Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.,* 159 F.R.D. 562, 567 (D. Kan. 1994) (other internal citations omitted)).

advice; and a showing, again based on competent evidence, "that the documents do not contain or incorporate non-privileged underlying facts;"

(7) The number of pages of the document;

(8) The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and

(9) Any other pertinent information necessary to establish the elements of each asserted privilege.[14]

The objecting party must provide enough information in the privilege log to enable the other party, and the Court, to assess each element of the privilege and determine its applicability.[15] Mere conclusions are insufficient, and a failure to provide supporting details in the privilege log may result in denial of the privilege.[16]

After hearing the arguments of counsel during the January 3, 2017 hearing, and having reviewed Plaintiff's initial privilege log (ECF No. 30, Ex. 7), the Court agreed the log was lacking under this district's precedent discussed above.[17] However, acknowledging the effort of Plaintiff to support its objection, and the meritorious dispute regarding the applicability and scope of the privilege, the Court declined to overrule Plaintiff's objection on that basis, preferring to decide the issue on the merits. Plaintiff was ordered to prepare and serve a revised privilege log on Defendant within five days of that hearing. As ordered, Plaintiff produced a more detailed privilege log (ECF No. 36), and the Court accepts the amended log and turns to the merits of the privilege issue.

---

[14] *Schmitz*, 2011 WL 1627010, at *7-*8 (citing *In re Universal Serv. Fund Tel. Billing Practices Litig.,* 232 F.R.D. 669, 673 (D. Kan. 2005) (internal citations omitted)).

[15] *See* Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii); *Schmitz*, 2011 WL 1627010, at *8 (citing *McCoo v. Denny's Inc*., 192 F.R.D. 675, 680 (D. Kan. 2000) (other internal citations omitted)).

[16] *See Schmitz*, 2011 WL 1627010, at *8 (internal citations omitted).

[17] *See supra* notes 14-16 and accompanying text.

### ii.       Statutory Exception to Attorney-Client Privilege

Along with the definition of privilege found in K.S.A. § 60-426, the statute includes multiple exceptions.   One such exception found in § 60-426(b)(3) is applicable when communications between a client and his attorney "are relevant to a breach of duty by the lawyer to his client."  The statute does not broadly expose any communication to disclosure "simply because it is raised in litigation;" rather, it requires "either the attorney or client [to] charge the other with a breach of duty arising from their professional relationship."[18]  The underlying rationale for the exception is, when either an attorney or client accuses the other of a breach of duty, "it would be unjust for a party to that relationship to maintain the privilege so as to preclude disclosure of confidential communications relevant to the issue of breach."[19]

Relying on this section, Defendant argues the communications between Grissinger and Plaintiff are not privileged at all.  The communications between Grissinger and Plaintiff regarding NorthRock were clearly "relevant to a breach of duty by the lawyer to his client."[20]   Though Plaintiff admits the exclusion may have applied in the *Grissinger* action—where Grissinger claimed malpractice against Acord and Bridgebuilder—the Court agrees the exclusion may not apply in this action, where Grissinger is not a party and neither party to this case claims malpractice.  Neither party provides any authority for extending the statutory exclusion in the underlying case to the current action, and the Court declines to do so.

---

[18] *Simmons Foods*, 191 F.R.D. at 632.
[19] *Id.*
[20] K.S.A. § 60-426(b)(3).

### iii.    Waiver by Voluntary Disclosure (Explicit Waiver)

Even if information is protected by attorney-client privilege, the privilege may be waived, either through voluntary disclosure or by implied waiver.   Dealing first with voluntary waiver, two statutes discuss explicit waiver of the privilege: K.S.A. § 60-437 and K.S.A. § 60-426a.

Kansas evidence rule K.S.A. § 60-437 describes the waiver of privilege by previous disclosure, explaining a person who otherwise holds a privilege has no privilege "if the judge finds that such person . . . without coercion, or without any trickery, deception, or fraud practiced against him or her, and with knowledge of the privilege, made disclosure of any part of the matter or consented to such a disclosure made by anyone."[21]   Defendant claims Grissinger, as the holder of the privilege, waived the privilege by filing the underlying lawsuit.   But Plaintiff argues Grissinger did not disclose any communications to a third party during the underlying suit—the suit was settled early on, and no public filings contained details of communications.   Plaintiff contends the act of filing the lawsuit itself, without detailed disclosure, does not constitute explicit waiver. Arguably, Grissinger disclosed "part of the matter"[22] as contemplated by the statute.   However, because the Court finds § 60-426a more applicable, it is unnecessary to decide the ultimate issue on K.S.A. § 60-437.

If voluntary disclosure of privileged information occurs in a court proceeding, both K.S.A. § 60-426a and Fed. R. Evid. 502 offer parameters on the scope of the waiver.   Both the state and federal rules, in nearly identical language, contemplate "subject matter

---

[21] K.S.A. § 60-437.
[22] *Id.*

waiver," explaining how partial waiver of the privilege will constitute a complete waiver of the privilege as to the entire subject matter if the following elements are shown:

(1) the waiver is intentional;
(2) the disclosed and undisclosed communications or information concern the same subject matter; and
(3) they ought in fairness be considered together.[23]

Both K.S.A. § 60-426a and FRE 502 are relatively recent adoptions.  A review of legislative history reveals nothing regarding the legislature's intent in adopting K.S.A. § 60-426a in 2011,[24] nor does a review of caselaw reveal any Kansas state cases analyzing the topic.  But FRE 502 was adopted three years prior to the state rule.[25]  Not only are FRE 502 and K.S.A. § 60-426a practically identical,[26] but FRE 502 "applies even if state law provides the rule of decision."[27]  Therefore, the review of caselaw analyzing FRE 502 is appropriate,[28] and a recent federal case sheds some light on the issue.

In the 2014 opinion *Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns LLC*,[29] this district reviewed waiver of privilege under FRE 502.  Although the case examined FRE 502 and related Federal Circuit cases in the context of patent litigation, its analysis is

---

[23] K.S.A. § 60-426a (a)(1)-(3); Fed. R. Evid. 502(a)(1)-(3).
[24] *See* H.R. Jour., 2011 Reg. Sess. No. 62 (Kan. May 9, 2011) (introduction of section 60-426a into S.B. 63) and S. Jour., 2011 Reg. Sess. No. 66 (Kan. June 1, 2011) (reporting H. Sub. for S.B. 63 approval on May 25, 2011).
[25] Fed. R. Evid. 502 became effective Sept. 19, 2008.  Without additional legislative history, the Court can only speculate the adoption of FRE 502 was the impetus for the adoption of the state provision.
[26] The federal and state provisions use the same language, except FRE 502 includes a provision that it applies to state proceedings, federal court-annexed arbitration proceedings, and federal court-mandated arbitration proceedings, in certain circumstances set out in the rule. 3 Kan. Law & Prac., Guide Kan. Evid. § 4:5 Privileged communications (5th ed.).
[27] Fed. R. Evid. 502(f).
[28] *See, e.g.*, *Skepnek v. Roper & Twardowsky, LLC*, No. 11-CV-4102-DDC, 2014 WL 4377706, at *5 (D. Kan. Sept. 4, 2014) (noting that, when comparing federal common law and Kansas state law regarding privilege, "the two bodies of law do not appear to differ in any material respect.").
[29] No. 11-2684-JWL, 2014 WL 3611665, at *3 (D. Kan. July 22, 2014).

instructive.  In that case, Sprint's trial counsel in a previous action included in his opening statement at trial that outside counsel "agreed with" in-house counsel's assessment regarding patent infringement.  Although the details of the advice were not disclosed, the ultimate conclusion was.  Analyzing FRE 502, the court found by that statement, Sprint disclosed the substance of legal advice and waived the attorney-client privilege regarding the subject matter of the advice.[30]

The *Sprint* court thoroughly examined the standards for subject-matter waiver and acknowledged the lack of a "bright-line rule":

> The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter. The waiver extends beyond the document initially produced out of concern for fairness, so that a party is prevented from disclosing communications that support its position while simultaneously concealing communications that do not. There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice to the parties of permitting or prohibiting further disclosures.[31]

The court explained under Fed. R. Evid. 502(a) and its Explanatory Note, waiver extends to undisclosed communications concerning the same subject matter if the intentionally disclosed information "ought in fairness . . . be considered together" with the undisclosed information.[32] "[A] subject matter waiver . . . is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to

---

[30] *Id*. at *4.

[31] *Id*. at *3-*4 (quoting *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349–50 (Fed. Cir. 2005); citing *United States v. Workman,* 138 F.3d 1261, 1263 (8th Cir. 1998) (other citations omitted)).

[32] *Id*. at *4.

prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."[33]  Therefore, the court focused on the "ultimate question of fairness."[34]

Similarly here, although Grissinger's underlying suit may not have disclosed the minute details of his communications with BridgeBuilder, it revealed the ultimate issue of the case—the substance of the advice BridgeBuilder gave to Grissinger—without requiring an inferential leap.  In fact, Grissinger's Petition claimed BridgeBuilder breached its duty in multiple ways when representing him on the NorthRock transaction.[35]  And, although Plaintiff emphasizes Grissinger's absence from this lawsuit, the *Sprint* action also contained disparate parties from the suit where waiver occurred, but the court drew similarities between the patents at issue in the earlier case and the same patents at issue in the new cases.  Likewise, the advice Grissinger received is the focus of both this case and the underlying action.  In *Sprint*, Senior District Judge John W. Lungstrum found,

> It certainly cannot be assumed that such information concerning Vonage's infringement will be relevant in the present actions involving different defendants, but because some of the same patents are at issue here, it is possible that some portion of the law firm's analysis could prove relevant. *Fairness dictates that defendants be permitted to test the truth of the statement of the legal advice received, at least for purposes of discovery.*[36]

And ultimately, fairness must determine the question before this Court.  In its effort to test the truth of Plaintiff's claim, Defendant offers every opposition to privilege argument

---

[33]  *Id.* (citing advisory committee explanatory note to Fed. R. Evid. 502; *In re Urethane Antitrust Litig.,* 2011 WL 322675, at *3 (D. Kan. Jan. 31, 2011).
[34]  *Id.*
[35]  Although Grissinger's Petition (ECF No. 1-1, at 31-36) also includes BridgeBuilder's "accountant-client" relationship with Grissinger, BridgeBuilder did not object to discovery on the basis of an "accountant-client" privilege and the Court does not consider such an objection preserved or address the issue herein.
[36]  *Sprint*, 2014 WL 3611665, at *4 (emphasis added).

available to it, to proverbially "see what sticks"—and the Court can appreciate its methods, given the unusual facts before us.  But in the multiple standards governing privilege and waiver articulated by the parties in their arguments, the Court does find common themes: the underlying considerations of fairness and prejudice.

In the statutory exception to privilege found in K.S.A. § 60-426(b)(3), the focus is on the "unjust" nature of withholding the information ("it would be *unjust* for a party to that relationship to maintain the privilege so as to preclude disclosure of confidential communications relevant to the issue of breach.").[37]  In K.S.A. § 60-426a (and FRE 502), providing for explicit waiver, the ultimate consideration is one of fairness.[38]  Similarly, an analysis of implied waiver[39] requires consideration of whether application of the privilege would deny the opposing party access to information vital to its defense,[40] and caselaw emphasizes the "manifest unfairness" to the opposing party."[41]

Ultimately, neither Grissinger (as the privilege-holder)[42] nor Plaintiff[43] may use the privilege as both a sword and a shield.[44]  Grissinger may not selectively use the substance of

---

[37] *Simmons Foods*, 191 F.R.D. at 632 (analyzing K.S.A. § 60-426(b)(3)).

[38] *Sprint*, 2014 WL 3611665, at *4.

[39] *See infra* Section II.B.1.a.4.

[40] *Williams,* 464 F. Supp. 2d at 1104–05 (quoting *Hearn*, 68 F.R.D. at 581).

[41] *Id.* (citing *Hearn*, 68 F.R.D. at 581).

[42] John Grissinger refuses to waive the attorney-client privilege for his communications with BridgeBuilder/Acord, as evidenced by his attorney's letter to Plaintiff's counsel dated Nov. 16, 2016 (ECF No. 33, Ex. C).

[43] Plaintiff argues Kansas Rule of Professional Conduct 1.6 prevents it from disclosing its communications with Grissinger because the rule only permits disclosure in a proceeding between attorney and client.  Plaintiff cites KRPC 1.6(b)(3), which allows counsel to disclose otherwise privileged information "to establish a claim or defense on behalf of the lawyer *in a controversy between the lawyer and the client.*" (Pl.'s Opp., ECF No. 33, at 5; emphasis added by Plaintiff.)  But Plaintiff ignores the final clause of KRPC 1.6(b)(3) which reads, "or to respond to allegations *in any proceeding concerning the lawyer's representation of the client.*"  Even if this clause did not apply

BridgeBuilder's representation of him to support his malpractice action, yet refuse to allow the representation to be examined in this related action involving the same subject matter. Even if the opponents are not identical in both cases, the subject matter is.  To allow Plaintiff to claim it did not offer investment advice, and sue Defendant on that basis—but not allow any party (or eventually the ultimate factfinder, for that matter) to review the substance of the advice would be manifestly unjust and prejudicial by depriving Defendant of the ability to meaningfully defend its case.

#### iv.    Implied or "At Issue" Waiver

Even if a litigant does not intentionally disclose privileged information, he "may implicitly waive the attorney-client privilege by placing protected communications 'at issue.'"[45]  Both parties briefly address the topic of implied waiver in their briefing, and discuss the tendency in this district to utilize an "intermediate approach." In doing so, the court must determine the party asserting privilege has implicitly waived the privilege when he places protected information at issue "through some affirmative act for his own benefit,

---

(which the Court does not fully explore here), BridgeBuilder will be protected from ethical concerns under KRPC 1.6(b)(4) by this order, requiring disclosure.

[44] *See, e.g.*, *S.E.C. v. McNaul*, 277 F.R.D. 439, 444 (D. Kan. 2011) (citing *In re Keeper of Records,* 348 F.3d 16, 24 (1st Cir. 2003) ("[i]mplying a subject matter waiver in such a case [when party puts advice of counsel at issue] ensures fairness because it disables litigants from using the attorney-client privilege as both a sword and a shield"); *cf. Frontier Refining, Inc.,* 136 F.3d at 704 (stating "a litigant cannot use the work product doctrine as both a sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion")).  *See also Simmons Foods*, 191 F.R.D. at 633 (citing *FDIC v. Wise,* 139 F.R.D. 168 (D. Colo. 1991) ("To be sure, there is authority that attorney-client communications cannot be used both as a sword and a shield, i.e., when a party defends the conduct which is the subject of the suit by relying on advice of counsel.")).

[45] *Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, No. 11-2684-JWL-JPO, 2015 WL 11121848, at *1–2 (D. Kan. Apr. 16, 2015) (internal citations omitted).

and to allow the privilege to protect against disclosure of such information would [be] manifestly unfair to the opposing party."[46]

Because the Court finds the disputed information discoverable under an explicit waiver theory, it is unnecessary to reach or analyze the issue of implied waiver.  Suffice it to say, however, that in light of the focus on manifest unfairness, the Court's conclusion would not differ.

## v.    Conclusion - Privilege

The parties here agree on one crucial detail:  whether BridgeBuilder communicated with Grissinger as an investment advisor, rather than an attorney, is the ultimate issue in this case.  Strictly confining the privilege "within the narrowest possible limits" to avoid depriving the factfinder of relevant and critical information,[47] the Court finds that StarStone's defense would be vastly crippled without access to the communications between Grissinger and BridgeBuilder regarding the NorthRock transaction, creating fundamental unfairness and extreme prejudice[48] to StarStone.

---

[46] *Id.* (citing *Hearn*, 68 F.R.D. at 581).

[47] *Stovall*, 22 P.3d at 140 (internal citations omitted).

[48]  *See* discussions of prejudice, in the context of waiver of attorney-client privilege, in *Sprint*, 2014 WL 3611665, at *3 ("There is no bright line test for determining what constitutes the subject matter of a waiver, rather courts weigh the circumstances of the disclosure, the nature of the legal advice sought and *the prejudice to the parties* of permitting or prohibiting further disclosures.") (emphasis added; internal citations omitted).  *See also IMC Chemicals, Inc. v. Niro Inc.*, No. 98-2348-JTM, 2000 WL 1466495, at *22 (D. Kan. July 19, 2000) ("Parties may not use the privilege to *prejudice their opponent's case* or to disclose some selected communications for self-serving purposes. . . .  A party may implicitly waive the privilege when it asserts a claim that *in fairness requires* examination of protected communications" (emphasis added; internal quotes and citations omitted).

Although Grissinger is not a party to this suit, it is worthwhile to examine the purpose of the attorney-client privilege.[49]   "The theoretical predicate underlying all recognized privileges is that secrecy and confidentiality are necessary to promote the relationship fostered by the privilege.  Once the secrecy or confidentiality is destroyed by a voluntary disclosure to a third party, the rationale for granting the privilege in the first instance no longer applies."[50]   Regardless of whether Grissinger disclosed the details of his communications in the underlying case, he placed the subject matter of his communications with BridgeBuilder in dispute when he filed a malpractice suit based on BridgeBuilder's advice.  The fostering of the relationship between client and advisor is no longer a focus.

Under this unique circumstance, when a malpractice insurer is defending a claim by its insured regarding the very same legal advice supporting the insured's underlying breach of duty action, the scope of waiver must be extended in the pursuit of truth and interest of fundamental fairness.   Without the substance of communications relied upon by the privilege holder in the previous suit, the insurer would simply be unable to defend its case and the factfinder left without crucial facts.

But this does not mean the scope of the waiver is unlimited.  Expanding the waiver of privilege to communications outside the NorthRock transaction goes too far.  The subject matter at issue in both the underlying malpractice action and the current case is BridgeBuilder's advice to Grissinger regarding NorthRock.  As the court found in *Sprint*,[51] the Court concludes Grissinger should be deemed to have waived the attorney-client

---

[49] *See supra* note 4 (discussing the purpose of the attorney-client privilege).
[50] *Stovall,* 22 P.3d at 141.
[51] *Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns LLC*, No. 11-2684-JWL, 2014 WL 3611665, at *4 (D. Kan. July 22, 2014)

privilege with respect to the specific subject of the advice received by BridgeBuilder concerning the NorthRock transaction.  There is no basis to otherwise extend the scope of the waiver.

All documents contained in the privilege log produced by Plaintiff are direct communications between Grissinger and Plaintiff, and/or, by their descriptions, relate to the promissory notes in question in the *Grissinger* action.  Therefore, Defendant's motion to compel (**ECF No. 29) is GRANTED in part.**  Plaintiff must produce to Defendant all 42 documents[52] withheld on the basis of attorney-client privilege **within 10 days** of the filing of this order.

### 2.      Relevance

In addition to the privilege issue, the parties disagree on the scope of production required by Plaintiff.  The primary dispute centers on whether information related to other transactions between Plaintiff and Grissinger—beyond the NorthRock transactions—are relevant to establish a pattern and practice of Plaintiff providing investment advice to Grissinger.

#### a.      Legal Standard - Relevance

Fed. R. Civ. P. 26(b)(1) permits discovery of "any non-privileged matter that is relevant to any party's claim or defense."  Additionally, the scope of discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the

---

[52] *See* Pl.'s privilege log (ECF Nos. 30-7, 36).

parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[53]

If the party seeking discovery meets its initial, minimal burden to demonstrate its request is relevant, on its face,[54] the resisting party cannot rely upon conclusory statements that the requested discovery is irrelevant.[55]   It "must either demonstrate the discovery sought does not come within the broad scope of relevance defined in Rule 26(b)(1), or that it is of such marginal relevance that the potential harm caused by the discovery would outweigh the presumption in favor of broad disclosure."[56]

### b.    Disputed Discovery Requests

Plaintiff argues Defendant is engaged in a fishing expedition, seeking documents related to numerous other transactions during the three-year time period when BridgeBuilder/Acord acted as Grissinger's advisor.   Plaintiff contends the information is irrelevant to Grissinger's underlying malpractice claim, and because the documents number in the tens of thousands, and privilege will also be an issue in their production, discovery of the documents is disproportionate to their ultimate benefit.

Defendant maintains a number of arguments with regard to items on the privilege log it believes are relevant but non-privileged.   But the documents on the log have now been ordered produced, so these arguments are moot.   Primarily, Defendant contends the

---

[53] Fed. R. Civ. P. 26(b).
[54] *Speed Trac Techs.*, No. 08-212-KHV-JPO, 2008 WL 2309011, at *2 (citing *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.,* No. 05–2164-MLB-DWB, 2007 WL 2122437, at *4 (D. Kan. July 20, 2007)
[55] *XPO Logistics Freight*, No. 16-MC-224-CM-TJJ, 2016 WL 6996275, at *4 (citing *Speed Trac Techs.*, No. 08-212-KHV-JPO, 2008 WL 2309011, at *3).
[56] *Id.*

information outside the scope of the NorthRock transaction would assist Defendant in showing Acord/BridgeBuilder had a pattern of providing investment advice to clients, and could show the likelihood that the same happened in the NorthRock deal.

The parties could not agree upon the proper scope of production to 14 separate requests, comprising 11 categories of documents. Although each category of information will be discussed individually, the overarching theme in this Court's ruling is this: relevance is found only in the information directly related to the NorthRock transaction. Because this case concerns transactions where the attorney-client privilege[57] is held by at least one non-party to this action, the Court is wary about expanding the scope of discovery, at this time, to those transactions not directly related to the underlying *Grissinger* lawsuit and NorthRock transaction.

If Defendants learn something in the production ordered here which leads it to believe transactions outside NorthRock are necessary to its defense, further discovery and discussion may be appropriate at a later time. However, although discovery is broad, the Court prefers to proceed cautiously to avoid potential hazards of expanded production, including proportionality and privilege concerns.

i.   **1st RFP No. 1:**   Documents produced in response to Grissinger's requests for production in the *Grissinger* action

In this request, Defendant seeks drafts and revisions of the two promissory notes and related agreements; generally, those documents Grissinger was provided regarding the

---

[57] Although not raised by Plaintiff in the current disputes, the Court acknowledges the potential for other privilege issues—whether attorney-client or accountant-client privileges—to be raised by third parties if the scope of discovery is expanded. *See also supra* note 35.

NorthRock transaction.   The parties clarified at hearing that although Grissinger served documents requests on BridgeBuilder/Acord in the state court case, BridgeBuilder simply responded by giving Grissinger a copy of his entire client file, and that was the extent of discovery in the underlying action.

Because this request deals directly with the NorthRock transaction, Plaintiff's objection is overruled and the documents requested must be produced.

ii.     **1st RFP No. 3:**  Documents regarding Bridgebuilder's services to be performed on behalf of Grissinger in any matter regarding NorthRock

Like the previous request, Defendant contends through this request, it seeks any documents reflecting investment advice.   Although the Court expressed concern regarding the time frame of the request, Defendant clarified the request is limited to the NorthRock transaction.   Because the request is narrowed to the NorthRock transaction, Plaintiff's objection is overruled, and Plaintiff must produce all responsive documents.

iii.    **1st RFP No. 5:**   Documents that support Bridgebuilder's affirmative defense in the *Grissinger* action that Grissinger's claims were barred by the assumption of the risk

Through this request, Defendant seeks to discover emails, correspondence, or any notes to file from Grissinger that may have documented what Acord said to him about the NorthRock transaction.   This request is narrowed to the *Grissinger* action; therefore Plaintiff's objection is overruled; and all responsive documents must be produced.

> iv. **1st RFP No. 9:**  Documents between Bridgebuilder/Acord and any other person regarding the two NorthRock promissory notes Bridgebuilder produced in discovery in *Grissinger* action

Again, although Defendant's request seeks information "produced in discovery" in the underlying action, the parties acknowledge minimal formal discovery occurred. Defendant clarified it is really looking for drafts and information regarding the NorthRock promissory notes.  Because the promissory notes are those at issue in the *Grissinger* lawsuit, this request is sufficiently narrowed to relevant information.  Although there was some discussion regarding the potential confidentiality of the documents, the parties are reminded that "confidentiality" does not equate to "privilege," and the Protective Order (ECF No. 14) in this action will safeguard any sensitive information produced.  Plaintiff's objection is overruled.

> v. **1st RFP No. 10:**  Documents reflecting efforts by Bridgebuilder/Acord to inquire of NorthRock and/or its principals the purpose of the proceeds made available by Grissinger through the promissory notes at issue

Through this request, Defendant seeks to discover whether BridgeBuilder/Acord told Grissinger what the loan money was being used for, and what the relative risks may be. Because the topic is clearly narrowed to the NorthRock transaction only, Plaintiff's objection is overruled and Plaintiff must produce responsive documents.

> vi. **1st RFP Nos. 2, 4; 2nd RFP Nos. 1, 3:**  Documents and billing statements between Bridgebuilder/Acord and Grissinger

Defendant makes arguments in its initial briefing (Def.'s Mem., ECF No. 30) regarding production of attorney billing statements, both between BridgeBuilder/Acord and Grissinger, and between BridgeBuilder/Acord and its defense counsel (the Spencer Fane

23

firm) in the *Grissinger* action.  Defendant argued Bridgebuilder only produced proof of payment of the invoices to its underlying defense counsel's firm, but failed to produce any legal bills or billing statements.  Defendant contends it needs the billing statements to assess Plaintiff's actual damages, by verifying whether the payments to the Spencer Fane law firm relate to the defense of the underlying action and if the charges are reasonable.

During the hearing and in its written response (ECF No. 33), Plaintiff reported every bill regarding the NorthRock transaction was produced, and it was not Plaintiff's intention to withhold any billing statements regarding NorthRock.  Additionally, Plaintiff's counsel assured the Court he contacted his client regarding disputed redactions to the Spencer Fane billing statements, and the parties should be able to come to agreement on that issue.  It argued if Defendant had issues regarding the statements, it should have conferred with Plaintiff before including the issue in the motion to compel.

In light of the lack of conference regarding the billing statements, Plaintiff's motion is denied without prejudice on this issue.  At the January 3, 2017 hearing, the parties were order to thoroughly confer regarding the production of billing statements.  In the event the parties are unable to come to an agreement, the parties may address this issue with the Court at a later date.

> **vii.**   **2nd RFP No. 2:**  Documents between Bridgebuilder/Acord and Grissinger regarding accounting services

Through this request, Defendant seeks to discover the types of services Plaintiff provided to Grissinger.  If Grissinger actually accused BridgeBuilder/Acord of accounting malpractice, the legal malpractice policy would not apply, so Defendant wants to discover

precisely what service(s) were at issue in the underlying suit.  On its face, the request is not restricted to only the information related to NorthRock.  Therefore, to the extent Defendant seeks those documents between BridgeBuilder/Acord regarding accounting services *for the NorthRock transaction*, Plaintiff's objection is overruled and responsive documents must be produced.   To the extent Defendant seeks information regarding accounting services provided by BridgeBuilder/Acord to Grissinger, unrelated to NorthRock, Plaintiff's objections are sustained.  Because no "accountant-client" privilege was raised, any newly-raised objection to this request is highly discouraged as unpreserved and untimely.[58]

> **viii.**   **2nd RFP No. 4:**  Documents between Grissinger and any person or entity released by him in the settlement of the *Grissinger* action

This request expands upon the previous topic.  Defendant argues the request is tied directly to the NorthRock litigation, and no privilege should apply to any third party involved in the settlement.  Again, Defendant contends it is trying to ascertain whether the settlement was based upon legal or accounting malpractice.  Although the Court understands the rationale behind Defendants' request, the parties acknowledge the settlement agreement itself has been produced.  Again, in an effort to minimize the effects of discovery on third parties, Plaintiff's objection to this request is sustained.   If this information becomes necessary at a later date, Defendant may ask the Court for further direction.

---

[58] *See supra* note 35.

      **ix.**    **2nd RFP No. 9:**  Non-privileged documents relating to services provided to Grissinger by Acord in any transaction in which Grissinger provided funds to a third party

Through this request, Defendant seeks to support its belief that the NorthRock transaction was actually a part of an ongoing investment strategy between BridgeBuilder/Acord and Grissinger.  But, because this request is not limited to the sole transaction at issue in this case, and in light of potentially multiple privilege concerns, Plaintiff's relevance objection is sustained.

      **x.**    **2nd RFP No. 10:**  Documents identifying persons with an ownership interest in NorthRock

Plaintiff objected to this request solely on the basis of attorney-client privilege.  From the information provided on the privilege log, the only apparent privilege asserted was Grissinger's privilege, and as described at length above, Grissinger's privilege is waived.  Again, the parties are reminded of the Protective Order in place to safeguard any sensitive financial information.  Because this request goes to heart of the NorthRock transaction, it is deemed to seek relevant, non-privileged information and Plaintiff's objections are overruled.

      **xi.**    **2nd RFP No. 11:**  Non-privileged documents identifying any person who invested in or lent money to NorthRock with any involvement of or by BridgeBuilder/Acord

Plaintiff objects to this request on the bases of privilege and relevance.  Defendant contends it simply seeks to determine who else was involved with NorthRock.  If Acord represented others, Defendant would like the opportunity to depose them or seek other discovery showing a pattern of behavior by BridgeBuilder/Acord.

Because privilege is no longer at issue, this request is determined on relevance. Although this request does relate only to NorthRock, the advice to Grissinger alone is the issue in this case, so documents related to other investors do not appear relevant at this time. Plaintiff's objection is sustained.

### 3.     Other Privilege Concerns

The final dispute between the parties was whether, if documents related to other transactions are determined relevant, if any of the non-NorthRock documents are protected by privilege.  Because documents outside the scope of the NorthRock transaction are not found to be relevant at this time, the Court sees no need to determine the issue of privilege regarding any such documents.

### C.     Other Issues

During the January 3, 2017 hearing, Defendant orally requested the insurance applications submitted by Plaintiff after the NorthRock transaction (*see* Pl.'s Resp. to Def.'s Second Requests for Production, ECF No. 30, Ex. 3). Defendant explained it is seeking those disclosures or applications that describe the NorthRock litigation, and asked the Court to add those documents to this order.  However, because this issue was not addressed in the pending motion to compel, the Court instructed counsel to confer regarding this issue.  This will allow Plaintiff time to review Defendant's request and the status of its current production.  The Court will preserve this issue for later review, but in light of the Court's rulings enclosed here, the Court is hopeful the parties can resolve this issue without additional intervention.

## VI.   Conclusion

In light of the above discussion, the Court orders as follows:

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel (**ECF No. 29**) is **GRANTED in part and DENIED in part** as set forth above.  Plaintiff must produce to Defendant all documents contained on its privilege log (ECF No. 36) within 10 days of the filing of this order.

**IT IS FURTHER ORDERED** that Plaintiff produce to Defendant those documents referenced more specifically in Sections II.B.2(b)(i)-(xi) above.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 8th day of March 2017.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge
